GRACE DOTE and Others, Plaintiffs, *v.* THE DEPARTMENT OF LABOR OF THE STATE OF NEW YORK, FRIEDA S. MILLER, Industrial Commissioner, and WILLIAM J. PICARD and Others, Constituting the Board of Standards and Appeals of the Department of Labor, State of New York, Defendants.

Supreme Court, New York County, March 15, 1940.

*Wasserman & Erenstoft* [*H. L. Wasserman* of counsel], for the plaintiffs.

*John J. Bennett, Jr., Attorney-General* [*S. I. Smithline, Assistant Attorney-General,* of counsel], for the defendants.

HARRIS, J. Under the authority of provisions of section 111 of the Labor Law, the plaintiffs bring this action to obtain a review by this court of the validity and reasonableness of an order promulgated by the Industrial Commissioner of the State of New York, which order was dated March 10, 1938, and prohibited industrial homework in the artificial flower and feather industry. Not only do the plaintiffs in this proceeding attack such order No. 3 as invalid on account of being unreasonable, but they also attack the constitutionality of that section of the Labor Law (§ 351) which confers upon the Industrial Commissioner the authority to promulgate such an order. Such section, so far as pertinent herein, is as follows:

" 1. The Industrial Commissioner shall, after proper study and consideration, determine within what industries conditions may permit of industrial homework as hereinbefore defined without unduly jeopardizing the factory workers in such industries as to both wages and working conditions and without unduly injuring the health and welfare of the industrial homeworker himself. The Commissioner may then restrict the granting of permits and licenses for industrial homework as herein defined to such industries and may further issue rules and regulations designed to control and regulate industrial homework in the said permitted industries. In all other industries industrial homework is forbidden unless expressly permitted in writing by the Industrial Commissioner.

" 2. * * * b. Exception to this article may be made by the Industrial Commissioner in respect of such other provisions consonant with the general purpose of this article as the Commissioner may on study determine to be warranted by conditions."

The specific ground on which such section 351 is attacked herein is that it confers upon the Commissioner the legislative power of the State which is vested in the Legislature.

Pursuant to the provisions of such section 351, the Industrial Commissioner, after making a comprehensive study and consideration of the situation of homework in the above-mentioned industry, and based on such investigation, issued Order No. 3, which provides, in substance, as follows:

" 1. Prohibition of industrial homework. Pursuant to Article 13, Section 351, of the Labor Law, the Industrial Commissioner hereby prohibits industrial homework and the distribution of articles for industrial homework by any employer, contractor, or agent of an employer, manufacturing, processing, assembling, repairing, or otherwise treating or handling artificial flowers and feathers. For the purposes of this order, the Artificial Flower

Industry shall include the manufacture of and the processes and transactions involved in the manufacture and assembling of artificial flowers, fruits, and leaves of all materials including silks, cottons, woolens, velvets, and other fabrics of any kind; paper, cellophane, glass and leather. The Feather Industry shall include the preparation of and all operations on ostrich plumes and the manufacture and processing of articles made from feathers of any kind.

" All outstanding permits to employers and all outstanding certificates to homeworkers shall be null and void after May 2, 1938.

" After the effective date of this order, no permit shall be issued to an employer for the distribution of artificial flowers and feathers for industrial homework and no certificate shall be issued to a homeworker on artificial flowers and feathers, except as provided in Section 2 of this order for the Artificial Flower Industry."

The exceptions covered by section 2 of the order provide for special homework permits to be granted by the Commissioner if after investigation he is satisfied that the applicant was a homeworker who worked in the industry prior to March 10, 1938, for an employer who held a permit prior to that date, and (1) is unable to, because of age, or (2) on account of mental or physical disability could not adjust herself, or himself, to factory conditions or (3) because of his or her presence being required to care for an invalid in the home. It is further provided in such section 2 that the number of homeworkers permitted any one employer shall not exceed one to each ten factory workers employed by the employer of the applicant. Further provisions are made in the order as to the maximum amount of work and the rates of pay so as to make them substantially equal to such conditions governing the factory worker. Section 3 of the order provides that variation may be made from the provisions of the order in proper cases, providing the intent of the order and of article 13 shall be observed.

The plaintiffs herein made application for homeworkers' permits and these permits were denied. Following such denial and in accordance with the provision of article 3 of the Labor Law, providing for review of such denial, the plaintiffs petitioned the reviewing body (Board of Standards and Appeals) for a review of the validity and reasonableness of the order. The matter of review of such order is covered in section 110 of the Labor Law and provides, in substance, for an appeal on the ground of invalidity or unreasonableness and gives to the Board authority to join several petitions in one proceeding. Such section 110 further provides that, if the issues raised have been considered in a prior proceeding,

the Board may without hearing confirm its previous determination. Following the appeal by the petitioners, the Board upheld the reasonableness and validity of said Order No. 3 without a hearing, and based its decision on its previous decision concerning an attack on the order in a proceeding entitled, " In the Matter of the Petition of William Allinson and Max Punim." In the Allinson and Punim matter the Board held a hearing, made a record and, after study and investigation, upheld the reasonableness and validity of said Order No. 3.

The questions now here, as this court views them, are as follows:

(1) Is section 351 of the Labor Law constitutional?

(2) Is the so-called Order No. 3 valid and reasonable?

(3) Did the Board of Standards and Appeals act properly in disposing of the petitions of the parties thereto (plaintiffs herein) by deciding the same on the record in the Allinson and Punim case?

In reference to the constitutionality of the basic statute (Labor Law, § 351), as has been said above, the attack is made on the ground that the Legislature improperly delegated its power of legislation to the Industrial Commissioner. The test to be applied in this question is whether the Legislature permitted the Industrial Commissioner to assume legislative powers, or whether the Legislature provided a statute the administration of which statute lay with the Industrial Commissioner; and whether the Legislature violated the rights of property in adopting section 351 of the Labor Law. On this last named question, I am of the opinion that the Legislature was within the police power when it adopted this legislation and, therefore, did not violate property rights in enacting the same. I also view the statute (Labor Law, § 351) as one that provided for the gradual elimination of homework for economic reasons and which simply gave to the Industrial Commissioner the right to bring about such abolition by proper rules and procedure. Therefore, I hold that the statute itself is constitutional.

The attack upon the validity or reasonableness of the order itself is one that in the first place goes to its constitutionality and, of course, I further hold that the order is not violative of the Constitution. So far as the reasonableness of the order itself is concerned, it is apparent that it is the result of study and investigation and is an endeavor in good faith to carry out the direction of the Legislature and, although it may appear arbitrary to those who may suffer loss on account of its promulgation and enforcement, in the whole it is for the general good of the economic order and cannot be considered unreasonable in the light of the study and investigation of the Legislature and the Industrial Commissioner.

There remains the interesting question as to whether in taking

the Allinson and Punim case as a standard the Board of Standards and Appeals violated the provisions for review. It is to be noted that the provisions for review permit the Board, on the same issues and without hearing, to confirm a previous determination. (Labor Law, § 110, subd. 3.) On this point the plaintiffs contend that the matter in review must be one in which the parties at present before the Board of Standards and Appeals were the same in the prior proceeding. The Legislature must have meant to establish a rule broader than this. Otherwise individuals could continually bring proceedings and insist on lengthy and long hearings where the basic facts had already been considered by the Board of Standards and Appeals. I am of the opinion that, if the issues are identical, it is not necessary for a rehearing when other parties bring similar proceedings. The attack made on the Order No. 3 in the Allinson and Punim matter was an attack on the validity and reasonableness of the order. I think that this Allinson and Punim proceeding was such a prior proceeding as the Legislature had in mind in adopting section 110 of the Labor Law.

The plaintiffs further raise in this matter the question that the matter now before the court, at the time it was before the Board of Standards and Appeals, called for a hearing by the Board of Standards and Appeals, as follows:

(1) That the Allison and Punim proceeding was one brought by employers, while this proceeding is brought by workers;

(2) The provisions and enforcements of the Federal Wage and Hour Law have created new conditions in the industry, which new conditions did not exist at the time of the promulgation of Order No. 3, or at the time of the hearing on the order and determination of the Allinson and Punim matter.

Because of (1) and (2), just above, the plaintiffs ask the court that, if the statute and order are declared constitutional, and, in consequence, valid and reasonable, then that the matter should be sent back, by virtue of the power vested in the court, pursuant to subdivision 3 of section 111 of the Labor Law, to the Board of Standards and Appeals for further consideration. This request of the plaintiffs is one that I think should be granted for the reasons hereinbefore stated as being given by them for such request.

Judgment may be entered upholding the constitutionality of the order of the statute, which judgment should further provide that the issues which may be raised by the plaintiffs as homeworkers, in differentiation from those raised by employers, and the issues of the changes in the industry by virtue of the enactment and enforcement of the Federal Wage and Hour Law, be referred to the Board of Standards and Appeals for further consideration.